**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HYTTO PTE. LTD. (d/b/a "Lovense"),                  ) | |
|                                 ) | |
|           Plaintiff,                  ) | |
|                                 ) | |
|      v.                  ) | Case No. 2:26-cv-179 |
|                                 ) | |
| (1) SHENZHEN UNION CARGO NETWORK    ) | Jury Trial Demanded |
|     TECHNOLOGY CO., LTD.,                  ) | |
| (2) UNION CARGO INDUSTRY GROUP CO.,    ) | |
|     LIMITED,                  ) | |
| (3) UC GLOBAL TRADE INC.,                  ) | |
| (4) SUNRISE GLOBAL CHAIN, INC.,                  ) | |
| (5) TLA ACQUISITION CORP., AND    ) | |
| (6) CNVCOM LLC,                  ) | |
|                                 ) | |
|           Defendants.                  ) | |
|                                 ) | |

## <u>COMPLAINT</u>

Plaintiff Hytto Pte. Ltd., doing business as "Lovense" ("Plaintiff" or "Lovense"), by and through its undersigned counsel, files this complaint under 35 U.S.C. § 271 for patent infringement against Shenzhen Union Cargo Network Technology Co., Ltd.; Union Cargo Industry Group Co., Limited; UC Global Trade Inc.; Sunrise Global Chain, Inc.; TLA Acquisition Corp.; and CNVCOM LLC ("Defendants"), and alleges as follows.

1.      This is an action for patent infringement arising out of Defendants' infringement of U.S. Pat. Nos. 9,889,064 (the "'064 Patent"); 11,452,669 (the "'669 Patent"); 12,193,987 (the "'987 Patent"); 12,201,577 (the "'577 Patent"); 12,318,340 (the "'340 Patent"); and 12,350,221 (the "'221 Patent") (collectively the "Patents-in-Suit"), each generally relating to adult toys. Defendants do business under the alias "Honey Play Box" and/or sell Honey Play Box-branded

1

products and/or instrumentalities through the websites, such as honeyplaybox.com,

loversstores.com, or sextoy.com.

2.      Defendants are accused of infringing the Patents-in-Suit by making, using,

offering to sell, selling, or importing, to/within the United States; and inducing and/or

contributing to these acts, via at least the following Honey Play Box-branded products and/or

instrumentalities (collectively the "Accused Products"):

- Vibrators/stimulators/massagers: Pearl, Ryder, Oly 2, Joi Thrust 2, Melody, Pearl 2, Thrill, Tressa, Cyrus, Luis, Vibrosa, Terri, Pleasure Pivot, Fling, Gem, Noctura, Trill, Fortexa, Anello, Elektra, Aira, Trilux, Lili, Tempo, Noah, Rora 2, Harmony Duo, Frenzy, Rora, Cupid; and/or

- the Honey Play Box mobile application.

3.      Defendants each have knowledge of the Patents-in-Suit and their infringement at

least from the filing date of this complaint.  Defendants each have knowledge of the '669 Patent,

the '577 Patent, the '340 Patent, and the '221 Patent no later than September 16, 2025, when

counsel for Lovense sent a cease-and-desist letter with claim charts to Honey Play Box, its

counsel, and email addresses affiliated with the websites loversstores.com and sextoy.com.

## THE PARTIES

**Plaintiff**

4.      Plaintiff Hytto Pte. Ltd. (d/b/a "Lovense") is a Singaporean private limited

company with its registered address at 152 Beach Road, #11-05 Gateway East, Singapore,

189721.

5.      Lovense is a pioneering leader and an award-winning innovator in the field of

remote-controlled adult toys controllable through a smartphone or smartwatch application

connected to the internet, sometimes known as "connected intimacy" or "teledildonics." Plaintiff

is renowned for designing, manufacturing, and bringing to market a suite of high-tech, remotely

controlled adult products, most notably its flagship Lush series of smart vibrators. The core of Lovense's products is a proprietary and sophisticated technological ecosystem. This ecosystem utilizes advanced low-latency Bluetooth connectivity coupled with a robust cloud-based relay architecture. Plaintiff further develops toys that fit seamlessly with its own smartphone or smartwatch application and bring high-level experience to the users. Plaintiff's technology has pioneered and now dominates several key application segments:

- Long-Distance Relationships: Enabling couples to maintain intimacy across any geographical separation.

- Interactive Adult Entertainment: Revolutionizing the cam performance industry by allowing real-time, audience-controlled interaction, a feature that has become an industry standard largely due to Plaintiff's products and patents.

- Personal Wellness and Exploration: Providing users with a versatile tool for self-discovery.







# Free Apps That Support Lovense Toys

The Lovense experience is more than just sex toys. Enjoy a wide range of services and features to enrich your pleasure via Lovense Remote or other free apps like Tophy and VibeMate.

  

## Discover everything you can do with Lovense apps



### VibeMate

A browser app dedicated to online adult media, link with your toy for full immersion.

Learn More ›

Download:

### Lovense Remote

Control toys with touch, sound, or motion from anywhere.

Download:

Learn More ›

### Tophy

Chatting, dating, or just playing, find who you are looking for. Share links and connect your toys with strangers or someone you've become closer to.

Learn More ›

Download:

# Let Viewers Interact with Your Toy

Basic Level    **Display your tip menu**    Control Link



6.　　Lovense's market leadership and innovative prowess are consistently validated by extensive third-party recognition from both premier general media and esteemed industry-specific awards. The company's groundbreaking work has been the subject of in-depth features and product recommendations across a diverse spectrum of the world's most influential media, including premier general business (Forbes, Newsweek), fashion/lifestyle (GQ, Vogue), and technology (CNET, TechCrunch) outlets, underscoring its broad cultural impact. And the adult-toy industry itself has formally endorsed Plaintiff's excellence through a multitude of prestigious awards, which specifically celebrate its singular achievements in product design, technological innovation, and user experience:





7.      Lovense's innovative technology allows greater control of adult toys responsive to various stimuli. For example, that technology allows close-range control via Bluetooth, long-distance control via Wi-Fi to Bluetooth, synchronizing the movement of the toy to music or making it responsive to various sounds, and tailoring vibration and other movement patterns to user preferences.



8.      As a result, Lovense's sales had grown rapidly through numerous channels before Defendants' infringing activity, including general online retailers such as Amazon.com, specialty adult-oriented online retailers, and brick-and-mortar stores, both throughout the United States and specifically in Texas. Thus, it is now a top brand within its industry. *See, e.g.*, "These Are the Best Sex Toy Brands on the Market," GQ, Jan. 8, 2024, *available at* https://www.gq.com/story/best-sex-toy-brands.

9.      The popularity of these products is further supported by the over five million downloads of the Lovense Remote application on Google Play and over 4,700 rated reviews of the same application on Apple App Store.

10.      To protect its market position and reputation for innovative products made under arduous quality standards, Lovense holds numerous intellectual property rights. These include over 76 issued utility patents in the United States, including the Patents-in-Suit.

11.      Lovense currently owns each of the Patents-in-Suit and has the right to pursue the infringement claims and requests for relief set forth in this Complaint.

12.     Lovense has complied with any applicable marking requirements for all applicable times.

**Defendants**

13.     On information and belief, Defendant Shenzhen Union Cargo Network Technology Co., Ltd. (also known as "Shenzhen Jiaxintong Network Technology Co., Ltd." or "深圳市嘉信通网络科技有限公司") (hereinafter "Shenzhen UC") is a corporation organized under the laws of the People's Republic of China, having a principal place of business at Room A901, Factory Building No.1, Tian'an Cyber City Innovation Park, No. 475 Huangge North Road, Huanggekeng Community, Longcheng Subdistrict, Longgang District, Shenzhen, Guangdong, China.

14.     On information and belief, Shenzhen UC manufactures the Accused Products to be sold to/within the United States, and also offers to sell and sells the Accused Products to/within the United States.

15.     On information and belief, Defendant Union Cargo Industry Group Co., Limited (hereinafter "Hong Kong UC") is a corporation organized under the laws of Hong Kong SAR, China, having a principal place of business at Office Unit No. 3, 13th Floor, Grand City Plaza, Nos. 1-17 Sai Lau Kok Road, Tsuen Wan, New Territories, Hong Kong SAR, China.

16.     On information and belief, Hong Kong UC at least offers to sell, sells, and imports the Accused Products to/within the United States.  On information and belief, Hong Kong UC is controlled by or under common control with Shenzhen UC.

17.     On information and belief, Defendant UC Global Trade Inc. (hereinafter "California UC") is a California corporation with its principal place of business at 14225 Telephone Ave., Unit D, Chino, CA 91710.

18.     On information and belief, California UC at least imports, offers to sell, and sells the Accused Products to/within the United States.  California UC is affiliated with Shenzhen UC because Rong Wang (also known as "Shirley Wang") was a 50% shareholder of Shenzhen UC between January 20, 2010 and November 10, 2025, and has been the CEO, CFO, Vice President, and the agent for service for California UC since at least January 22, 2024.  Further, the front desk at the principal place of business of Shenzhen UC bears a logo of "UC Global" with Chinese characters "嘉信通网络科技" (Jiaxintong Network Technology) under the logo, a Union Cargo logo on the left side of the UC Global logo, and a Honey Play Box logo between the two.  *See* picture below.



19.     On information and belief, Defendant Sunrise Global Chain, Inc. (hereinafter "Sunrise GC") is a California corporation with its principal place of business at 14726 Ramona Ave. E9, Chino, CA 91710.  Sunrise GC is affiliated with California UC because the same Rong

Wang (also known as "Shirley Wang") has been the CFO and the agent for service for Sunrise GC since at least October 9, 2024.

20.     On information and belief, Sunrise GC at least imports, offers to sell, and sells the Accused Products to/within the United States.  On information and belief, Sunrise GC is controlled by or under common control with California UC.

21.     Defendants Shenzhen UC, Hong Kong UC, California UC, and Sunrise GC will hereinafter collectively be referred to as "Honey Play Box Defendants."

22.     On information and belief, Defendant TLA Acquisition Corp. (hereinafter "TLA") is a corporation organized under the laws of Delaware, having a principal place of business at 2029 Century Park E, Ste 4200N, Los Angeles, CA 90067.

23.     On information and belief, TLA offers to sell and sells the Accused Products through a website, loversstores.com, operated and/or owned by TLA.

24.     On information and belief, Defendant CNVCOM LLC (hereinafter "CNVCOM") is a corporation organized under the laws of Delaware, having a principal place of business at 1350 East Flamingo Road, Suite 792, Las Vegas, NV 89119.

25.     On information and belief, CNVCOM offers to sell and sells the Accused Products through a website, sextoy.com, operated and/or owned by CNVCOM.

26.     Defendants TLA and CNVCOM will hereinafter collectively be referred to as "Honey Play Box Distributors."

## JURISDICTION AND VENUE

27.     This Court has original subject matter jurisdiction over the claims in this action under the provisions of the Patent Act, 35 U.S.C. § 1, *et seq*., 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

28.     This Court may properly exercise personal jurisdiction over Defendants since each of the Defendants placing the Accused Products in the stream of commerce foreseeably brings those products to consumers in the United States, including Texas, through at least the fully interactive e-commerce stores at www.honeyplaybox.com, www.loversstores.com, and/or www.sextoy.com; and through sales through distributors.

29.     Venue is appropriate in this Court under applicable law, including 28 U.S.C. §§ 1391 and/or 1400.

## COUNT 1
## INFRINGEMENT OF UNITED STATES PATENT NO. 9,889,064
### (35 U.S.C. § 271)

30.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31.     Defendants have directly infringed the '064 Patent by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Accused Products that infringe at least claims 1 and 8 of the '064 Patent.

32.     An exemplary claim chart showing how at least one such Accused Product infringes claims 1 and 8 of the '064 Patent is attached as Exhibit A.

33.     Honey Play Box Defendants have induced others to infringe and/or contributed to the infringement of the '064 Patent by inducing and/or contributorily causing others to infringe at least claims 1 and 8 of the '064 Patent.

34.     On information and belief, Honey Play Box Defendants at least sell the Accused Products to third-party distributors and retailers in the United States.  These distributors and retailers in turn offer for sale and/or sell the Accused Products to third-party end users in the United States.  The distributors, retailers, and end users in the United States at least use the

Accused Products.  These activities undertaken by the distributors, retailers, and end users constitute direct infringement of the '064 Patent.

35.    Honey Play Box Defendants' sale of the Accused Products to distributors and retailers and eventually end users has induced and continue to induce acts by distributors, retailers, and end users that Honey Play Box Defendants know or should have known constitute direct infringement of the '064 Patent.  Honey Play Box Defendants actively induce infringement of the '064 Patent by designing the Accused Products such that they infringe the '064 Patent and by directing, promoting, and encouraging the use, sale, and/or importation of the Accused Products by distributors, retailers, and/or end users in ways that infringe the '064 Patent.

36.    The Accused Products are known by Honey Play Box Defendants to be especially made or especially adapted for use in infringement of the '064 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Honey Play Box Defendants' sale of the Accused Products to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '064 Patent.

37.    Defendants have infringed the '064 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

38.    Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement of the '064 Patent, as well as any other damages as appropriate under 35 U.S.C. § 284.

39.     Defendants' infringement of the '064 Patent has been and is willful, deliberate, and in disregard of Lovense's patent rights.  Lovense is thus entitled to enhanced damages up to three times the amount of actual damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## COUNT 2
## INFRINGEMENT OF UNITED STATES PATENT NO. 11,452,669
### (35 U.S.C. § 271)

40.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41.     Defendants have directly infringed the '669 Patent by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Accused Products that infringe at least claims 1 and 5 of the '669 Patent.

42.     An exemplary claim chart showing how at least one such Accused Product infringes claims 1 and 5 of the '669 Patent is attached as Exhibit B.

43.     Honey Play Box Defendants have induced others to infringe and/or contributed to the infringement of the '669 Patent by inducing and/or contributorily causing others to infringe at least claims 1 and 5 of the '669 Patent.

44.     On information and belief, Honey Play Box Defendants at least sell the Accused Products to third-party distributors and retailers in the United States.  These distributors and retailers in turn offer for sale and/or sell the Accused Products to third-party end users in the United States.  The distributors, retailers, and end users in the United States at least use the Accused Products.  These activities undertaken by the distributors, retailers, and end users constitute direct infringement of the '669 Patent.

45.     Honey Play Box Defendants' sale of the Accused Products to distributors and retailers and eventually end users has induced and continue to induce acts by distributors,

retailers, and end users that Honey Play Box Defendants know or should have known constitute direct infringement of the '669 Patent. Honey Play Box Defendants actively induce infringement of the '669 Patent by designing the Accused Products such that they infringe the '669 Patent and by directing, promoting, and encouraging the use, sale, and/or importation of the Accused Products by distributors, retailers, and/or end users in ways that infringe the '669 Patent.

46.     The Accused Products are known by Honey Play Box Defendants to be especially made or especially adapted for use in infringement of the '669 Patent and are not staple articles or commodities of commerce suitable for substantial noninfringing use. Honey Play Box Defendants' sale of the Accused Products to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '669 Patent.

47.     Defendants have infringed the '669 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

48.     Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement of the '669 Patent, as well as any other damages as appropriate under 35 U.S.C. § 284.

49.     Defendants' infringement of the '669 Patent has been and is willful, deliberate, and in disregard of Lovense's patent rights. Lovense is thus entitled to enhanced damages up to three times the amount of actual damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## COUNT 3
## INFRINGEMENT OF UNITED STATES PATENT NO. 12,193,987

**(35 U.S.C. § 271)**

50.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

51.     Defendants have directly infringed the '987 Patent by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Accused Products that infringe at least claims 1, 15 and 16 of the '987 Patent.

52.     An exemplary claim chart showing how at least one such Accused Product infringes claims 1, 15 and 16 of the '987 Patent is attached as Exhibit C.

53.     Honey Play Box Defendants have induced others to infringe and/or contributed to the infringement of the '987 Patent by inducing and/or contributorily causing others to infringe at least claims 1, 15 and 16 of the '987 Patent.

54.     On information and belief, Honey Play Box Defendants at least sell the Accused Products to third-party distributors and retailers in the United States.  These distributors and retailers in turn offer for sale and/or sell the Accused Products to third-party end users in the United States.  The distributors, retailers, and end users in the United States at least use the Accused Products.  These activities undertaken by the distributors, retailers, and end users constitute direct infringement of the '987 Patent.

55.     Honey Play Box Defendants' sale of the Accused Products to distributors and retailers and eventually end users has induced and continue to induce acts by distributors, retailers, and end users that Honey Play Box Defendants know or should have known constitute direct infringement of the '987 Patent.  Honey Play Box Defendants actively induce infringement of the '987 Patent by designing the Accused Products such that they infringe the '987 Patent and by directing, promoting, and encouraging the use, sale, and/or importation of the Accused Products by distributors, retailers, and/or end users in ways that infringe the '987 Patent.

56.     The Accused Products are known by Defendants to be especially made or especially adapted for use in infringement of the '987 Patent and are not staple articles or commodities of commerce suitable for substantial noninfringing use. Defendants' sale of the Accused Products to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '987 Patent.

57.     Defendants have infringed the '987 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

58.     Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement of the '987 Patent, as well as any other damages as appropriate under 35 U.S.C. § 284.

59.     Defendants' infringement of the '987 Patent has been and is willful, deliberate, and in disregard of Lovense's patent rights.  Lovense is thus entitled to enhanced damages up to three times the amount of actual damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## <u>COUNT 4</u>
### INFRINGEMENT OF UNITED STATES PATENT NO. 12,201,577
### (35 U.S.C. § 271)

60.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

61.     Defendants have directly infringed the '577 Patent by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Accused Products that infringe at least claim 1 of the '577 Patent.

62.     An exemplary claim chart showing how at least one such Accused Product infringes claim 1 of the '577 Patent is attached as Exhibit D.

63.     Honey Play Box Defendants have induced others to infringe and/or contributed to the infringement of the '577 Patent by inducing and/or contributorily causing others to infringe at least claim 1 of the '577 Patent.

64.     On information and belief, Honey Play Box Defendants at least sell the Accused Products to third-party distributors and retailers in the United States.  These distributors and retailers in turn offer for sale and/or sell the Accused Products to third-party end users in the United States.  The distributors, retailers, and end users in the United States at least use the Accused Products.  These activities undertaken by the distributors, retailers, and end users constitute direct infringement of the '577 Patent.

65.     Honey Play Box Defendants' sale of the Accused Products to distributors and retailers and eventually end users has induced and continue to induce acts by distributors, retailers, and end users that Honey Play Box Defendants know or should have known constitute direct infringement of the '577 Patent.  Honey Play Box Defendants actively induce infringement of the '577 Patent by designing the Accused Products such that they infringe the '577 Patent and by directing, promoting, and encouraging the use, sale, and/or importation of the Accused Products by distributors, retailers, and/or end users in ways that infringe the '577 Patent.

66.     The Accused Products are known by Defendants to be especially made or especially adapted for use in infringement of the '577 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use. Defendants' sale of the Accused Products to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '577 Patent.

67.     Defendants have infringed the '577 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

68.     Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement of the '577 Patent, as well as any other damages as appropriate under 35 U.S.C. § 284.

69.     Defendants' infringement of the '577 Patent has been and is willful, deliberate, and in disregard of Lovense's patent rights.  Lovense is thus entitled to enhanced damages up to three times the amount of actual damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## COUNT 5
### INFRINGEMENT OF UNITED STATES PATENT NO. 12,318,340
### (35 U.S.C. § 271)

70.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

71.     Defendants have directly infringed the '340 Patent by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Accused Products that infringe at least claims 1, 10 and 19 of the '340 Patent.

72.     An exemplary claim chart showing how at least one such Accused Product infringes claims 1, 10 and 19 of the '340 Patent is attached as Exhibit E.

73.     Honey Play Box Defendants have induced others to infringe and/or contributed to the infringement of the '340 Patent by inducing and/or contributorily causing others to infringe at least claims 1, 10 and 19 of the '340 Patent.

74.     On information and belief, Honey Play Box Defendants at least sell the Accused Products to third-party distributors and retailers in the United States.  These distributors and retailers in turn offer for sale and/or sell the Accused Products to third-party end users in the United States.  The distributors, retailers, and end users in the United States at least use the Accused Products.  These activities undertaken by the distributors, retailers, and end users constitute direct infringement of the '340 Patent.

75.     Honey Play Box Defendants' sale of the Accused Products to distributors and retailers and eventually end users has induced and continue to induce acts by distributors, retailers, and end users that Honey Play Box Defendants know or should have known constitute direct infringement of the '340 Patent.  Honey Play Box Defendants actively induce infringement of the '340 Patent by designing the Accused Products such that they infringe the '340 Patent and by directing, promoting, and encouraging the use, sale, and/or importation of the Accused Products by distributors, retailers, and/or end users in ways that infringe the '340 Patent.

76.     The Accused Products are known by Defendants to be especially made or especially adapted for use in infringement of the '340 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use. Defendants' sale of the Accused Products to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '340 Patent.

77.     Defendants have infringed the '340 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

78.    Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement of the '340 Patent, as well as any other damages as appropriate under 35 U.S.C. § 284.

79.    Defendants' infringement of the '340 Patent has been and is willful, deliberate, and in disregard of Lovense's patent rights.  Lovense is thus entitled to enhanced damages up to three times the amount of actual damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## COUNT 6
## INFRINGEMENT OF UNITED STATES PATENT NO. 12,350,221
### (35 U.S.C. § 271)

80.    Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

81.    Defendants have directly infringed the '221 Patent by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Accused Products that infringe at least claims 1 and 8 of the '221 Patent.

82.    An exemplary claim chart showing how at least one such Accused Product infringes claims 1 and 8 of the '221 Patent is attached as Exhibit F.

83.    Honey Play Box Defendants have induced others to infringe and/or contributed to the infringement of the '221 Patent by inducing and/or contributorily causing others to infringe at least claims 1 and 8 of the '221 Patent.

84.    On information and belief, Honey Play Box Defendants at least sell the Accused Products to third-party distributors and retailers in the United States.  These distributors and retailers in turn offer for sale and/or sell the Accused Products to third-party end users in the United States.  The distributors, retailers, and end users in the United States at least use the

Accused Products.  These activities undertaken by the distributors, retailers, and end users constitute direct infringement of the '221 Patent.

85.    Honey Play Box Defendants' sale of the Accused Products to distributors and retailers and eventually end users has induced and continue to induce acts by distributors, retailers, and end users that Honey Play Box Defendants know or should have known constitute direct infringement of the '221 Patent.  Honey Play Box Defendants actively induce infringement of the '221 Patent by designing the Accused Products such that they infringe the '221 Patent and by directing, promoting, and encouraging the use, sale, and/or importation of the Accused Products by distributors, retailers, and/or end users in ways that infringe the '221 Patent.

86.    The Accused Products are known by Defendants to be especially made or especially adapted for use in infringement of the '221 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use. Defendants' sale of the Accused Products to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '221 Patent.

87.    Defendants have infringed the '221 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

88.    Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement of the '221 Patent, as well as any other damages as appropriate under 35 U.S.C. § 284.

89.    Defendants' infringement of the '221 Patent has been and is willful, deliberate, and in disregard of Lovense's patent rights.  Lovense is thus entitled to enhanced damages up to three times the amount of actual damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

Plaintiff respectfully asks the Court to grant the following relief:

A.  Judgment that each of the Patents-in-Suit are valid and enforceable;

B.  Judgment that Defendants have infringed and/or are infringing at least one or more claims of the Patents-in-Suit;

C.  Entry of preliminary and permanent injunctions pursuant to 35 U.S.C. § 283 and Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendants and their officers, agents, attorneys, and employees, and those acting in privity or concert with them, from any further acts of infringement until the expiration of each applicable patent or until such later date as the Court may determine;

D.  Judgment awarding Plaintiff damages, in the form of lost profits, or in the alternative, not less than a reasonable royalty, together with pre-judgment and post-judgment interests;

E.  Enhanced trebled damages under 35 U.S.C. § 284 for Defendants' willful and malicious infringement,

F.  Judgment that this case is exceptional and awarding Plaintiff its attorney fees, expert expenses, and costs, in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure; and

G.  Awards of any further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

Dated: March 3, 2026                          */s/ Kris Y. Teng*

Kris Y. Teng
Texas Bar. No. 24079443
Zhe "Philip" Wang (*pro hac vice* forthcoming)
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone:     (703) 995-9887
Fax:       (703) 821-8128
kris.teng@bayes.law
philip.wang@bayes.law

Michael C. Smith
SCHEEF & STONE, LLP
State Bar No. 18650410
113 E. Austin St.
Marshall, TX 75670
Tel.: (903) 938-8900
Michael.Smith@solidcounsel.com

*ATTORNEYS FOR PLAINTIFF*
*HYTTO PTE. LTD. (D/B/A "LOVENSE")*